IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

JOSEPH DINGLER                                                                                                        PLAINTIFF

v.                                                                                            No. 2:08CV20-B-A

CITY OF SOUTHAVEN, ET AL.                                                          DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* complaint of Joseph Dingler, who seeks relief against the defendants under 42 U.S.C. § 1983 for events arising out of his detention by law enforcement officers after a dispute with his former girlfriend. The defendants Brooke Ann Atkins and Ashley Faye Atkins ("Atkins Defendants") have moved to dismiss the complaint for failure to state a claim upon which relief could be granted. They have also filed a counterclaim, alleging that the plaintiff's claims are entirely without merit. The Atkins Defendants have thus requested that the plaintiff pay their attorneys fees and expenses. The plaintiff has answered the counterclaim and moved to dismiss the allegations therein. The defendant W. Tom Long ("Long") has answered the plaintiff's complaint and moved for summary judgment. The defendants DeSoto County and Bill Rasco ("County Defendants") have filed a motion to dismiss the complaint in lieu of an answer. The defendants City of Horn Lake, Darryl Whaley, and Kevin Thomas ("City Defendants") have also answered the complaint and filed a separate motion for summary judgment. The matter is ripe for resolution. For the reasons set forth below, judgment shall be entered for the defendants.

## Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving

party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

**Undisputed Material Facts**

Joseph Dingler was a Texas resident who met Brooke Atkins, a young lady from Mississippi, over the internet. Dingler moved to the Memphis, Tennessee area to work as a computer consultant. Brooke Atkins and Dingler dated briefly then broke up. After the breakup, Dingler confronted Brooke and her sister, Ashley, on May 18, 2007, and a shouting match ensued between Brooke and Dingler. Brooke and Ashley Atkins called the Southaven Police Department for assistance, and a police officer arrived on the scene to investigate. As a result of the investigation, the Southaven Police Department issued a "be on the lookout" notice to local law enforcement – leading to contact between an officer of the Horn Lake Police Department and Dingler. Dingler was restrained long enough for the officers to conduct a brief search and investigation. He was then released. as a result of his contact with the Horn Lake Police officer.

Defendant W. Tom Long is the Chief of Police for the City of Southaven, Mississippi. Chief Long has never had any involvement with Dingler, with the exception of being served with a copy of his lawsuit in this case. Chief Long executed an affidavit which details the available

reports from the Southaven Police Department involving Dingler. The court has only considered the following incident detailed in Long's affidavit in its decision – because the allegations in the plaintiff's complaint relate only to that incident:

**Date:** 03-18-07

**Report No.:** SPD07OFF000609

**CAD Incident No.:** SPD07CAD017885

**Officer:** Jonathan Ellis

**Circumstances of the Offense:** Disturbance caused by J. Dingler

**Summary**: On 03-18-07, Officer Ellis responded to the address of Brooke Atkins in reference to a disturbance. Atkins advised that her ex-boyfriend had just left the residence after starting a verbal disturbance. She stated that he had made threats to her to clear the house because he was en route to Horn Lake to get a weapon and coming back to the residence to kill everyone inside. She also advised that he had been making harassing telephone calls to her for the past week. She had previously warned him not to be on her property. Officer advised complainant of her right to sign charges for telephone harassment, she refused.

In addition, neither Brooke Ann Atkins, Ashley Faye Atkins, "BJ," nor the unnamed roommates listed in the complaint are employed by the State of Mississippi or any of its political subdivisions. Finally, county law enforcement officials have no supervisory authority over city law enforcement in Mississippi – and vice versa.

### Dingler's Claims

Dingler claims that Ashley and Brooke Atkins, as well as the other defendants, acted in concert to violate his civil rights by: (1) silencing his speech (violation of the First Amendment), (2) illegally seizing Dingler's vehicle and conducting an illegal search of the vehicle (violation of the Fourth Amendment), (3) illegally seizing Dingler's person by placing him in restraints during the search of his vehicle (violation of the Fourth Amendment). In his response to the

defendants' motion for summary judgment, Dingler raises numerous allegations arising out of other events, including a trial in which he plead *nolo contendere* to harassing Brooke Atkins over the telephone. Dingler has not alleged these facts in his complaint, and they have no bearing on the facts in the complaint. As such, the court shall not discuss these matters in this memorandum opinion.

## Discussion

This case arises out of the termination of a relationship between Brooke Atkins ("Brooke") and the plaintiff Joseph Dingler ("Dingler") which began with contact through the internet. Dingler then moved from his home in Texas to the Memphis, Tennesse, area to work as a computer consultant. He and Brooke dated a few months then broke up. Dingler had a heated argument with Brooke and others on May 18, 2007, and, as a result of the shouting match, Brooke called the Southaven Police Department and told them that Dingler had threatened to go home, get a weapon, return, and kill everyone inside. The Southaven Police Department put out a bulletin to "be on the lookout" for Joseph Dingler. A Horn Lake police officer responded, pulled Dingler over, restrained him, searched him and his vehicle, questioned him, then let him go on his way.

### The Civilians Were Not State Actors

Dingler brings the current action in federal court under 42 U.S.C. § 1983, a vehicle for vindicating federal constitutional rights violated by state actors. In a §1983 context , action by a private person is deemed state action where the challenged conduct may be "fairly attributable to the state." *Bass v. Parkwood Hospital*, 180 F.3d 234, 241 (5th Cir. 1999) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 200 (1972)). In this case, the actions of Brooke Atkins, her sister,

"BJ," and others present during the shouting match are simply not state actions. A citizen's decision to call the police department after a disturbance is not in any sense a state action. As such, all of Dingler's claims against Brooke Atkins, Ashley Atkins, and the other civilians present during the disturbance shall be dismissed for failure to state a claim upon which relief could be granted.

## Actions of Law Enforcement Officers

Dingler has not stated a claim against the law enforcement officer defendants in this case. Brooke Atkins called the Southaven Police Department, and a dispatcher sent an officer to investigate. A reasonable investigator who heard a report that Dingler had just threatened Brooke Atkins and others with gun violence after a domestic dispute would attempt to locate Dingler. Thus, the Southaven Police Department put out a "be on the lookout" notice to all law enforcement in the area. A Horn Lake Police officer located Dingler, pulled him over, restrained him, searched him and his vehicle, questioned him, then released him. These are the reasonable actions law enforcement officers should take upon receipt of such a report, and the court cannot find any of these defendants liable based upon the allegations in the complaint.

Dingler also objects to the manner in which he was detained and questioned. First, he alleges that he should not have been arrested at all based only upon the statements of Brooke Atkins, her sister, and their friends. According to Dingler (in his response to the defendants' motion for summary judgment), *only* if he had gone home, retrieved a firearm, returned to Brooke's home, and entered it with the firearm – *only then* – would law enforcement officers have the requisite authority to detain him and conduct a search of his person and his vehicle.

Such an argument is absurd – both in the practical world where police officers have sworn to protect the public – and under Fourth Amendment jurisprudence.

First, the court notes that, taking Dingler's allegations as true, he was clearly placed under arrest, as he was placed in handcuffs during the search. A suspect is under arrest if a reasonable innocent person in the shoes of the suspect would not feel free to leave. *United States v. Collins*, 972 F.2d 1385 (5th Cir. 1992); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct 1868, 20 L.Ed.2d 889 (1968). No one in handcuffs could feel free to leave; as such, Dingler was placed under arrest. However, a warrant is not a prerequisite to an arrest. A valid constitutional arrest without a warrant is made when a police officer has probable cause to believe that the person to be arrested has committed a felony. *U.S. v. Watson*, 423 U.S. 411, 96 S.Ct. 820 (1976). "Whether an arrest is illegal . . . hinges on the absence of probable cause," and the plaintiff has no cause of action for false arrest unless the arresting officer lacked probable cause. *Sorenson v. Ferrie*, 134 F. 3d 325, 328 (5th Cir. 1998). "Probable cause to arrest exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." *U.S. v. Bustamante-Saenz*, 894 F. 2d 114, 118 (5th Cir. 1990). The probable cause requirement does "not demand any showing that such a belief is correct or more likely true than false." *United States v. Antone*, 753 F. 2d 1301, 1304 (5th Cir. 1985). "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695 (1979). Based upon the statements of the witnesses interviewed, the

officers arresting Dingler had probable cause to arrest and detain him while they searched his person and vehicle. As such, his allegations of illegal search and seizure must fail.

Dingler also alleges that Officer Thomas threatened him with "violence" if the plaintiff mentioned the detention to anyone. The plaintiff did not, however, allege that Officer Thomas actually took any violent action against him – or even spoke to him again after the arrest and brief detention. Taking Dingler's allegation as true (for the purposes of this memorandum opinion only), Officer Thomas' actions amounted only to verbal abuse, which does not give rise to a cause of action under § 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993), *Siglar v. Hightower*, 112 F.3d 191(5th Cir. 1997). For these reasons, all of Dingler's claims against law enforcement officers in this case shall be dismissed for failure to state a claim upon which relief could be granted.

## Municipal and County Defendants

To establish municipal liability under § 1983, a plaintiff must demonstrate that an official municipal policy or custom caused the constitutional violation alleged. *Piotrowski v. City of Houston*, 51 F.3d 512, 517 (5th Cir. 1995). First, as discussed above, the court has found that Dingler's constitutional rights have not been violated. Dingler's claim thus fails for this reason alone. In addition, Dingler has alleged no facts to show that any policy-making officials for Southaven, Horn Lake, or DeSoto County implemented an official policy that caused his constitutional rights to be violated; nor has he established a persistent pattern of conduct by city officials that caused a constitutional violation. Indeed, Dingler has produced no policy evidence

at all.[1]  For this reason, all of Dingler's claims against municipal and county defendants shall be dismissed with prejudice.

Finally, Dingler has not alleged that DeSoto County or Bill Rasco have taken any action regarding Dingler whatsoever, a fact Sheriff Bill Rasco has confirmed in an affidavit submitted to the court.  Dingler has, however, alleged that DeSoto County and Sheriff Rasco failed to supervise municipal law enforcement officers.  In a § 1983 action, liability may not be imposed upon a governmental entity on a theory of *respondeat superior* for the actions of non-policy making government employees.  *Monell*, 436 U.S. at 690-94; *see Doe v. Rains County Independent School District*, 66 F.3d 1402, 1409 (5th Cir. 1995); *Brown v. Bryan County, Texas*, 53 F.3d 1410, 1418 (5th Cir. 1995).  Specifically, neither DeSoto County nor its Sheriff, Bill Rasco, had interaction with Dingler in any way.  In addition, municipal police departments and county sheriff's departments are separate entities in Mississippi, and neither has any supervisory authority over the other.  As such, the plaintiff's claims against these two defendants shall be dismissed with prejudice for failure to state a claim upon which relief could be granted.

## State Law Claims

The Mississippi Tort Claims Act provides the exclusive civil remedy under state law against a government entity or its employees for acts or omissions which give rise to a suit.  *City of Jackson v. Sutton*, 797 So.2d 977, 980 (Miss., 2001)(citing MISS. CODE ANN. §11-46-7(1)).  Procedurally, Dingler is barred from proceeding with state law claims because he failed to serve a Notice of Claim.  The Mississippi Tort Claims Act requires that the Notice of Claim be served

---

[1] The court entered a scheduling order making provisions for discovery, but Dingler did not engage in discovery.

ninety days prior to instituting a civil action thereon. MISS. CODE ANN. § 11-46-11(1) requires strict compliance with the 90-day notice requirement. *South Regional Medical Center v. Guffy*, 930 So. 2d 1252, 1258-59 (Miss. 2006); *University of Mississippi Medical Center v. Easterling*, 928 So. 2d 815 (Miss. 2006). Dingler's failure to provide a Notice of Claim is an absolute bar to his state law claims, which shall be dismissed with prejudice.

### Allegations of Conspiracy

The plaintiff has made the nebulous claim that the numerous defendants in this case have entered into a conspiracy to deprive him of his civil rights. He has not, however, offered evidence or alleged specific facts to support such a claim of conspiracy. As he has not pled facts sufficient to support his conspiracy claims, they shall be dismissed. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007).

### The Plaintiff's Cross-Motion for Summary Judgment

The plaintiff has filed a cross-motion for summary judgment with his response to the defendants' motion for summary judgment. The plaintiff's cross-motion does not set forth undisputed material facts and shall be denied for that reason. In addition, the cross-motion relies upon allegations that the plaintiff has not pled in his complaint (an incident regarding skateboarding at a local high school and speeding citations awarded to the plaintiff). As these incidents and claims were not made in the complaint, they are not properly before the court and shall be dismissed. Dingler also alleges that the defendants failed to protect him from harm from "others," citing *Farmer v. Brennan*, 511 U.S. 825 (1994). *Farmer* holds, however, that *prison* officials have a duty to protect *inmates* from harm at the hands of other *inmates*. Dingler has not, however, alleged that he was incarcerated – or that he actually suffered harm at the hands of

inmates. As such, this allegation shall be dismissed for failure to state a claim upon which relief could be granted.

## Sanctions

In their counterclaim, Brooke and Ashley Atkins seek sanctions against Dingler, arguing that he had no basis in law or fact to file the instant suit – and thus that the suit was brought in bad faith. Brooke and Ashley Atkins seek court costs, attorneys fees, and other reasonable litigation expenses. Dingler argues in response that he did not threaten to get a gun, return to the residence, and kill everyone inside – but, instead, told those in the residence that he knew that they were using illegal drugs (crystal methamphetamine and marijuana), and that he was going to call the police and report the drug possession and use. He alleges that Brooke Atkins and the others called the police instead, falsely stating to the police that Dingler had threatened to return with a gun and kill the occupants of the residence. For summary judgment purposes, the court may consider only sworn statements. The plaintiff, Joseph Dingler, did not place his signature upon this pleading (Motion to Dismiss, Objections, Answer to Counter-Claim). Thus, the pleading has not been executed, and the statements contained in the pleading have not been sworn under penalty of perjury. For this reason, the court shall not consider these statements in its decision.

The issue of sanctions is a close one in this case. Even from the pleadings Dingler himself has presented to the court, this case appears to be nothing more than Dingler's attempt to transform a simple breakup with his girlfriend into a federal case. Indeed, it appears that he is using nearly every means at his disposal to harass and punish Brooke Atkins for breaking up with him. Artful pleading cannot transform a meritless case into a meritorious one. Only

-11-

Dingler's status as a *pro se* litigant has prevented the court from holding a hearing for him to show cause why he should not be sanctioned for bringing these claims against all defendants. **The court hereby puts the plaintiff on notice: Federal court is not the proper venue for settling domestic disputes; nor is it the proper venue for trying to punish law enforcement officers for carrying out their sworn duty to protect the public.** The court cautions Dingler to ensure that his future claims arise out of constitutional violations, not his anger and frustration over breaking up with his girlfriend.

## Conclusion

In sum, all of the plaintiff's claims against the defendants shall be dismissed with prejudice, and judgment shall be entered for the defendants. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 31st day of March, 2009.

　　　　　　　　　　　　　　　　　　　　　　／s／ *Neal Biggers*
　　　　　　　　　　　　　　　　　　　　　　NEAL B. BIGGERS
　　　　　　　　　　　　　　　　　　　　　　SENIOR U. S. DISTRICT JUDGE